1

2

3

4

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 27, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JANICE E.,<br><br>                    Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                    Defendant. | NO:  2:19-CV-00414-FVS<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary

judgment.  ECF Nos. 16 and 17.  This matter was submitted for consideration

without oral argument.  The Plaintiff is represented by Attorney Christopher H.

Dellert.  The Defendant is represented by Special Assistant United States Attorney

Erin F. Highland.  The Court has reviewed the administrative record, the parties'

completed briefing, and is fully informed.  For the reasons discussed below, the

Court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 17, and

**DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 16.

ORDER ~ 1

1

**JURISDICTION**

2    Plaintiff Janice E.[1] filed for supplemental security income on February 16,

3    2016, and for disability insurance benefits on June 9, 2015.  She alleged an onset

4    date of March 1, 2010 in both applications.  Tr. 189-201.  Benefits were denied

5    initially, Tr. 135-37, and upon reconsideration, Tr. 142-46.  A hearing before an

6    administrative law judge ("ALJ") was conducted on April 18, 2018.  Tr. 35-72.

7    Plaintiff was represented by counsel and testified at the hearing.  *Id*.  The ALJ

8    denied benefits, Tr. 12-33, and the Appeals Council denied review.  Tr. 1.  The

9    matter is now before this court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

10

**BACKGROUND**

11    The facts of the case are set forth in the administrative hearing and

12    transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner.

13    Only the most pertinent facts are summarized here.

14    Plaintiff was 60 years old at the time of the hearing.  *See* Tr. 228.  She has a

15    master's degree that she pursued online, and she was given accommodations

16    including taking one class at a time and additional time to take tests.  Tr. 63.  She

17    lives with her son and grandchildren, aged three and six.  Tr. 41-43.  Plaintiff has

18    work history as an insurance field agent, benefit counselor, auditor, and

19

20    _____

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first

21    name and last initial.

ORDER ~ 2

administrative assistant.  Tr. 40-41, 49, 65.  She testified that she cannot not work because she "can't lift anything," and because of her anxiety and panic attacks.  Tr. 45, 49.

Plaintiff testified that she can carry five pounds comfortably, and if she tries to carry more she has pain that "makes [her immobile and [she] can't really do anything."  Tr. 51-52.  She reported that she spends 80% of her time in her room because she gets overwhelmed with being around a lot of people.  Tr. 52-53. Plaintiff can only walk one block before she gets out of breath, and she is afraid of birds.  Tr. 55-56.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

ORDER ~ 3

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

ORDER ~ 4

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

ORDER ~ 6

416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 1, 2010, the alleged onset date.  Tr. 17.  At step two, the ALJ found that Plaintiff has the following severe impairments: anxiety, depression, gastrointestinal disorder, and obesity.  Tr. 17.  At step three, the ALJ found that Plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 18.  The ALJ then found that since July 1, 2013, Plaintiff has the RFC

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds.  She can frequently stoop, kneel, crouch, and crawl.  She should avoid concentrated exposure to excessive vibration and workplace

ORDER ~ 7

hazards such as working with dangerous machinery and no working at unprotected heights.  She needs a restroom available in the workplace.  She is limited to simple, routine tasks in a routine environment with simple work-related decisions with superficial interaction with coworkers and brief interaction with the public.

Tr. 20.  At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  Tr. 26.  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: hand packager and press-machine operator.  Tr. 27.  On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from March 1, 2010, through the date of the decision.  Tr. 27.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 16.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's symptom claims; and

2. Whether the ALJ failed to fully develop the record.

## DISCUSSION

### A. Plaintiff's Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms.  "First, the ALJ must determine

whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

1      Here, the ALJ found Plaintiff's medically determinable impairments could

2   reasonably be expected to cause some of the alleged symptoms; however,

3   Plaintiff's "statements concerning the intensity, persistence and limiting effects of

4   these symptoms are not entirely consistent with the medical evidence and other

5   evidence in the record" for several reasons.[2]  Tr. 21.  As an initial matter, Plaintiff

6   generally argues that the ALJ "erred by failing to explain how evidence that she

7   referred to was inconsistent with Plaintiff's allegations."  ECF No. 16 at 7.  This

8   argument is inapposite.  Plaintiff is correct that in considering her symptom claims,

9   the ALJ "must specifically identify the testimony she or he finds not to be credible

10  and must explain what evidence undermines the testimony."  *Holohan v.*

11  *Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *see also Thomas*, 278 F.3d 958

12  (ALJ must 'make a credibility determination with findings sufficiently specific to

13  permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's

14  testimony.').  However, as noted by Defendant, "this is not a case where the ALJ

15  summarily dismissed Plaintiff's statements and simply offered a summary of the

16

17  _____

    [2] The Court notes that Plaintiff's opening brief challenges only the ALJ's findings

18  related to her claimed mental impairments; thus, the Court declines to consider the

19  ALJ's findings pertaining to any claimed physical impairments.  *See Carmickle*,

20  533 F.3d at 1161 n.2 (court may decline to address issues not identified with

21  specificity in Plaintiff's opening brief).

    ORDER ~ 10

medical record.  Rather, the ALJ offered specific reasons, for rejecting Plaintiff's statements: improvement in her symptoms, failure to follow medical advice, inconsistencies with the medical evidence, and childcare activities."  ECF No. 17 at 8 (further noting that the ALJ included specific citations to the record to support her rationale).

### 1. Failure to Seek and Comply with Treatment

First, the ALJ "considered that [Plaintiff] testified she wanted to take actions to help improve her situation, but reported to her mental health provider that she did not want to resume therapy."  Tr. 24.  The ALJ also noted Plaintiff's inconsistent visits to her providers, inconsistent use of her anxiety medication, and Plaintiff's "use of her medication to help her sleep instead of its intended purpose to help her function outside her home."  Tr. 24.  Unexplained, or inadequately explained, failure to seek or comply with treatment may be the basis for rejecting Plaintiff's symptom claims unless there is a showing of a good reason for the failure.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

In support of this finding, the ALJ cited a treating provider's note in May 2016 that Plaintiff did not want to reengage in therapy because she felt it was not effective; and June 2016 treatment notes indicate that Plaintiff did not identify any goals of treatment, and was attempting to rely entirely on medications for her treatment, "which they told her would not be enough."  Tr. 22 (citing Tr. 567, 571).  Moreover, the ALJ cited treatment notes in December 2016 that Plaintiff was

ORDER ~ 11

taking her Xanax to sleep instead of using it during the day to help her function

and leave the house; and a treating provider's note in October 2017 that it was

"unacceptable" for Plaintiff to stay inside, and directing that she "must leave the

house every day." Tr. 22 (citing Tr. 590, 631). Finally, the ALJ cited consistent

evidence of missed medical appointments, and Plaintiff's failure to timely schedule

required follow-up appointments. Tr. 22-23, 630 (noting that Plaintiff "has not put

any action into practice to improve mental health like regular appointment

scheduling therapy or regular visit[s] with psychiatry"), 642, 723, 749, 751 (noting

that provider has not seen Plaintiff in 5 months and she has "no showed or

canceled approximately 4-5 times for me").

Plaintiff generally argues that the ALJ erred by failing to consider that

Plaintiff's failure to engage in treatment, and evidence that she was not fully

complaint with treatment recommendations, was "directly attributable" to her

claimed mental impairments. ECF No. 16 at 13-16. Pursuant to Social Security

Ruling 16-3p, an ALJ "will not find an individual's symptoms inconsistent with

the evidence in the record on this basis without considering possible reasons he or

she may not comply with treatment or seek treatment consistent with the degree of

his or her complaints." Social Security Ruling ("SSR") 16-3p at *8-*9 (March 16,

2016), *available at* 2016 WL 1119029. Moreover, where the evidence suggests

lack of mental health treatment is part of a claimant's mental health condition, it

may be inappropriate to consider a claimant's lack of mental health treatment as

ORDER ~ 12

evidence of a lack of credibility.  *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).  However, when there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment rather than personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints.  *Molina*, 674 F.3d at 1113-14.

Here, the only evidence cited by Plaintiff in support of this argument is her own statement to a mental health provider in 2016 that she would not do group therapy because of her "fear of people and leaving the house."  ECF No. 16 at 15 (citing Tr. 590).  Plaintiff fails to cite, nor does the Court discern, evidence from a treating source that Plaintiff failed to seek or comply with treatment specifically due to her mental health impairments.  Thus, it was reasonable for the ALJ to conclude that Plaintiff's failure to seek and comply with mental health treatment was inconsistent with the alleged severity of her complaints.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld).  This was a clear and convincing reason for the ALJ to discredit Plaintiff's symptom claims.

## 2.  Improvement

Second, the ALJ found the record included evidence that Plaintiff's mental health symptoms reduced with increases in medication.  Tr. 24.  A favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir.

2008); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits).  In support of this finding, the ALJ cites reports by Plaintiff in June 2016 that she was not having panic attacks after an increase in medication; reports that her sleep was improved on medication; her report in June 2017 that she was having no depression or anxiety; her report in September 2017 that her medications were working; treatment notes in October 2017 that Plaintiff "benefited from" a switch in medication; her report in November 2017 that medication has "improved some [of] the intense anxiety she was feeling when she was off all medications"; treatment notes in November 2017 indicating Plaintiff's medication "seems to be working well for her," and simultaneous report from Plaintiff that she was "doing fine" and wanted to end the session; and a December 2017 report from Plaintiff that she "notices a positive change in the medications she is currently taking."  Tr. 22-23 (citing Tr. 571, 631, 633, 639, 727, 735, 738, 740-41, 744).

Plaintiff argues the records cited by the ALJ "ignor[e] more significant observations of the limitations in Plaintiff's functioning from the same appointments," including: tearful and apologetic behavior, heavy sighing while she was anxious, verbalizing calming strategies, and continuing to demonstrate anxiety "despite reporting she was 'doing better' on her new medications."  ECF No. 16 at

12-13 (citing Tr. 722, 726, 732, 735).[3]  However, the ALJ's decision includes

consideration all of the relevant medical evidence, including: Plaintiff's anxious

presentation during provider visits, her report that she was no longer able to

contain her mental health symptoms, her report that a particular medication was

unhelpful, reports of anxiety related to stress, a report that Plaintiff was only able

to leave her house every few days, Plaintiff's tearful and emotional presentation,

and observations that she had fair insight and judgment. Tr. 20, 22-23, 432, 558,

571, 642, 718.

---

[3] Plaintiff argues the ALJ "suggested that Plaintiff reported having better

management of her symptoms than she had years before" by "misrepresenting" a

treating provider's note that Plaintiff's "assets" included "manag[ing] to contain

her symptoms of depression and anxiety previous to 10 years ago."  ECF No. 16 at

11 (citing Tr. 718).  However, the Court's plain reading of the ALJ's decision

indicates that she properly summarized this treatment note as follows: "Plaintiff

reported to her provider that she had better management over her mental health

symptoms that she had years before."  Tr. 22.  The Court is unable to discern any

discrepancy or misrepresentation in the ALJ's summary of the medical evidence,

including Plaintiff's acknowledgement that she had better success in managing her

symptoms previous to the relevant adjudicatory period.

ORDER ~ 15

Based on the foregoing, and despite evidence that could be considered more favorable to Plaintiff, it was reasonable for the ALJ to conclude that evidence of improvement in Plaintiff's claimed mental impairments throughout the relevant adjudicatory period, when complying with treatment, was inconsistent with her allegations of incapacitating mental limitations. *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld). This was a clear and convincing reason to discredit Plaintiff's symptom claims.

### 3. Inconsistencies

Third, the ALJ noted that while Plaintiff "testified taking care of her grandchildren overwhelmed her and she rarely took care of them, the record supports [Plaintiff] regularly taking care of her grandchildren during the period at issue." Tr. 23. In evaluating the severity of Plaintiff's symptoms, the ALJ may consider inconsistencies in Plaintiff's statements, and between her testimony and her conduct. *See Thomas*, 278 F.3d at 958-59; *Tommasetti*, 533 F.3d at 1039 (prior inconsistent statements may be considered). Moreover, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113; *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (the ability to care for young children without

help has been considered an activity that may undermine claims of totally disabling impairment).

Here, in support of this finding, the ALJ cites consistent evidence in the longitudinal record indicating that Plaintiff regularly took care of her grandchildren, in contrast with her testimony that she rarely took care of them, including: advice during therapy sessions about how to manage when she feels overwhelmed when she is babysitting; her report in August 2017 that "there has been a lot going on with watching her grandchildren"; her report that she had to miss an appointment due to her inability to secure child care for her grandchildren; he report that it was "too much" to take care of her grandchildren and search for housing at the same time; and another report that she missed her psychiatric appointment and an appointment to look for housing because she was too tired after taking care of her grandchildren. Tr. 23 (citing Tr. 713-14, 721, 726, 744, 745, 748). In addition, the record indicates that her grandchildren were present at four therapy appointments that took place in Plaintiff's home, and Plaintiff arrived at one appointment with her grandson. Tr. 23, 732, 737, 740, 743.

Plaintiff concedes that her "statements about how frequently she saw her grandchildren may not have been wholly consistent with her earlier reports," but contends that "her testimony about being overwhelmed by them [was] consistent with the observations of her case manager who had seen her at her apartment." ECF No. 16 at 17. Plaintiff also contends, without relevant citation to legal

ORDER ~ 17

authority, that the "ALJ cannot claim an inconsistency where she did not ensure the testimony was properly focused." ECF No. 16 at 17. These arguments are unavailing. First, the Court's review of the hearing transcript indicates that the ALJ specifically prefaced questions about Plaintiff's childcare responsibilities by noting that "throughout the record there are a lot of references to you babysitting your grandchildren, feeling pretty overwhelmed," and "grandchildren being present at your home." Tr. 42. In addition, regardless of any consistency of Plaintiff's reports that she was "overwhelmed" when caring for her grandchildren, it was reasonable for the ALJ to rely on inconsistency between her testimony that she saw her grandchildren infrequently, and evidence in the record that she regularly took care of her grandchildren during the relevant adjudicatory period, as a reason to discount Plaintiff's symptom claims. This inconsistency between Plaintiff's testimony and her conduct was a clear and convincing reason for the ALJ to reject Plaintiff's symptom claims.

### 4. Lack of Objective Medical Evidence

Finally, the ALJ found that record does not substantiate disabling anxiety and depression. Tr. 21-22. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a

claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §

404.1529(c)(2).

Here, the ALJ set out the medical evidence contradicting Plaintiff's claimed

mental limitations, including findings that during examinations Plaintiff presented

as pleasant with a normal affect, appropriate mood and affect, normal behavior and

judgement, normal thought content, and reports that she was not experiencing

anxiety, depression, or confusion.  Tr. 21 (citing Tr. 353, 360, 366, 369, 373, 376,

383 (denies anxiety and depression), 426, 432, 559).  Plaintiff argues that the

treatment notes cited by the ALJ are not "substantial evidence of an inconsistency"

because Plaintiff was not being seen specifically for her mental health impairments

at these appointments.  ECF No. 16 at 9.  However, as noted by Defendant,

Plaintiff "fails to articulate why [these records] cannot constitute substantial

evidence.  Even if the principal reason Plaintiff sought care was for other

impairments, these providers still conducted objective evaluations that measured

Plaintiff's mental state."  ECF No. 17 at 6.

Plaintiff additionally argues that the ALJ improperly focused on benign

findings and observations while ignoring evidence supportive of Plaintiff's

allegations; and in support of this argument Plaintiff cites evidence taken largely

from treatment notes from the latter half of 2017 observing that Plaintiff  was very

anxious, had panic symptoms, was tearful at times, sighed heavily, and had

increased psychomotor activity.  ECF No. 16 at 9-13 (citing Tr. 628, 715, 718, 728,

ORDER ~ 19

732, 734, 737, 748).  Plaintiff is correct that an ALJ may not "cherry-pick" aspects of the medical record and focus only on those aspects that fail to support a finding of disability.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014).  However, "in interpreting the evidence and developing the record," the ALJ is not required to discuss every piece of evidence.  *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).  Moreover, as noted above, the ALJ gave substantive consideration to the entire medical record, including Plaintiff's reports of anxiety, anxious and tearful presentation during provider visits, and fair insight and judgment noted at mental status examinations. Tr. 20, 22-23, 432, 558, 571, 642, 718.

Based on the foregoing, and regardless of evidence that could be considered favorable to Plaintiff, it was reasonable for the ALJ to find the severity of Plaintiff's mental symptom claims was inconsistent with the longitudinal record. Tr. 21.  "[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."  *Burch*, 400 F.3d at 679. The lack of corroboration of Plaintiff's claimed limitations by the medical evidence was a clear and convincing reason for the ALJ to discount Plaintiff's symptom claims.  Moreover, even assuming, *arguendo*, that the ALJ erred in this reasoning, any error would be harmless because, as discussed above, the ALJ's ultimate rejection of Plaintiff's symptom claims was supported by substantial

1  evidence.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63

2  (9th Cir. 2008).

3       The Court concludes that the ALJ provided clear and convincing reasons,

4  supported by substantial evidence, for rejecting Plaintiff's symptom claims.[4]

5  **B. Duty to Develop the Record**

6       The ALJ has an independent duty to fully and fairly develop a record in

7  order to make a fair determination as to disability, even where, as here, the

8  claimant is represented by counsel.  *See Tonapetyan v. Halter*, 242 F.3d 1144,

9  1150 (9th Cir. 2001).  "Ambiguous evidence, or the ALJ's own finding that the

10  record is inadequate to allow for proper evaluation of the evidence, triggers the

11  ALJ's duty to 'conduct an appropriate inquiry.'"  *Id.* (quoting *Smolen v. Chater,* 80

12  F.3d 1273, 1288 (9th Cir.1996)).  Plaintiff argues the ALJ "erred in failing to

13  develop the record further despite the lack of an opinion from a treating or

14

15  ─────────────────────

16  [4] The ALJ noted that she "considered" Plaintiff's "regular weekly consumption of

     marijuana."  Tr. 24.  Plaintiff argues the ALJ did not sufficiently explain how

17  Plaintiff's use of marijuana undermined her symptom claims.  ECF No. 16 at 14.

18  The Court agrees.  Thus, the ALJ erred to the extent that this statement was offered

19  as a reason to discount Plaintiff's symptom claims.  However, the error is harmless

20  because the ALJ's ultimate rejection of Plaintiff's symptom claims was supported

21  by substantial evidence.  *See Carmickle*, 533 F.3d at 1162-63.

ORDER ~ 21

examining source and the subsequent submission of probative treatment notes."

ECF No. 16 at 17-19.  However, "an ALJ is not required to order every medical

evaluation that could conceivably shed light on a claimant's condition, but rather

just those that would resolve ambiguities or inadequacies in the record." *Lloyd v.*

*Astrue*, No. C-11-4902-EMC, 2013 WL 503389, at *5 (N.D. Cal. Feb. 8, 2013)

(*citing Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)).  Moreover, it is

Plaintiff's duty to prove that she is disabled; and this burden cannot be shifted to

the ALJ simply by virtue of the ALJ's duty to develop the record.  ECF No. 13 at

12 (citing *Mayes*, 276 F.3d at 459-60).

Here, as discussed above, the ALJ reviewed the entire 400-page medical

record, including the 2017 and 2018 treatment notes cited by Plaintiff and the

available opinion evidence, and identified sufficient evidence in the record as a

whole for a properly supported disability determination.  "The ALJ is responsible

for determining credibility, resolving conflicts in the medical testimony, and for

resolving ambiguities.  [The Court] must uphold the ALJ's decision where the

evidence is susceptible to more than one rational interpretation."  *Andrews v.*

*Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart,* 427 F.3d

1211, 1217 (9th Cir.2005) (finding the ALJ did not have a duty to further develop

the record because "the ALJ, with support in the record, found the evidence

adequate to make a determination regarding [Plaintiff's] disability").  The ALJ did

not find, and the Court is unable to discern, any inadequacy or ambiguity that did

not allow for proper evaluation of the record as a whole.  Thus, the ALJ did not err in failing to further develop the record in this case.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's.  *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  As discussed in detail above, the ALJ provided clear and convincing reasons to discount Plaintiff's symptom claims, and did not fail to further develop the record.  After review the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, ECF No. 16, is **DENIED**.

2.  Defendant's Motion for Summary Judgment, ECF No. 17, is

    **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE** the file.

**DATED** January 27, 2021.

Stanley A. Bastian
Chief United States District Judge

ORDER ~ 23